IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-03107-M-RJ

ABEL DeLEON, )
              Plaintiff, )
v. ) **ORDER**
LIEUTENANT SIMMONS, et al., )
              Defendants. )

This cause is before the court on defendant Garrity's converted motion for summary judgment, Mot. [D.E. 32], and plaintiff's "motion to compensate," Mot. [D.E. 42]. As discussed below, the court grants the motion for summary judgment and denies the motion to compensate.

Relevant Procedural History:

On May 8, 2024, Abel DeLeon ("plaintiff"), a federal inmate at F.C.I. Butner proceeding without prepayment of fees, filed *pro se* a complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"). See [D.E. 1, 4, 5, 9].

On November 18, 2024, plaintiff filed an amended complaint, naming as defendants Lieutenants Simmons, Hardy, Garrity, and the Federal Bureau of Prisons ("BOP"), and alleging violations of his Eighth Amendment rights during a use-of-force incident at the Butner Federal Medical Center ("FMC") on February 12, 2024, resulting in injuries. See Am. Compl. [D.E. 14].

On November 19, 2024, the court allowed plaintiff's amended complaint to proceed against Garrity, Hardy, and Simmons, but dismissed the BOP as a defendant. See Order [D.E. 15].

On April 23, 2025, Garrity moved to dismiss the complaint, Mot. [D.E. 32], and filed a memorandum [D.E. 33], the declaration of Dorthea Orr [D.E. 34], and an exhibit [D.E. 34-1].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) ("Roseboro"), the court notified plaintiff about the motion to dismiss, the consequences of failing to respond, and the response deadline. [D.E. 35].

On May 7, 2025, plaintiff filed a response in opposition [D.E. 36], and a motion to amend the complaint, Mot. [D.E. 37] (alleging his Aug. 19, 2024, diagnosis of fluid in the brain was due to trauma pursuant to the "kicks and punches received" during the events of February 12, 2024).

On May 21, 2025, Garrity filed a reply. [D.E. 38].

On November 21, 2025, the court, *inter alia*: granted plaintiff's motion to amend his complaint; converted Garrity's motion to dismiss to a motion for summary judgment; warned the parties that, pursuant to Federal Rule of Civil Procedure 56(f)(1), the court intended to consider the materials submitted by Garrity in evaluating whether plaintiff fully exhausted administrative remedies as to his claims against all defendants; and allowed plaintiff 21 days to file any further response to Garrity's converted motion for summary judgment. See Order [D.E. 40].

Pursuant to Roseboro, the court notified plaintiff about Garrity's converted motion for summary judgment, the consequences of failing to respond, and the response deadline. [D.E. 41].

On December 2, 2025, plaintiff filed a "motion to compensate [sic]." Mot. [D.E. 42].

On December 15, 2025, plaintiff filed a memorandum in opposition to the motion for summary judgment, Pl.'s Mem. [D.E. 43], with additional documents, which were erroneously labeled on the docket as an "amended complaint against all defendants [sic]," see [D.E. 44].

On December 31, 2025, Garrity moved for an extension of time to file a reply to plaintiff's December 15, 2025, filings. See Mot. [D.E. 45].

On January 12, 2026, the court granted Garrity's motion to extend time. Order [D.E. 46].

On January 13, 2026, Garrity filed a reply. [D.E. 47].

Plaintiff's Motion to Compensate:

Pursuant to Administrative/Tort Claim Number TRT-MXR-2024-05378, plaintiff seeks $701.35 for property lost during his housing unit transfer after the February 12, 2024, use-of-force incident. Mot. [D.E. 42] at 1. Plaintiff contends he has not yet heard back about his property. Id.

Plaintiff attaches to this motion: a May 30, 2024, letter from the BOP Mid-Atlantic Regional Office informing him that this claim was accepted and would be adjudicated pursuant to 31 U.S.C. § 3723, Mot. Attach. [D.E. 42-1] at 1; his February 3, 2025, request to staff inquiring about the delay in resolution of this claim, id. at 2; his April 15, 2024, TRULINCS message regarding the February 12, 2024, use-of-force incident, id. at 3; his May 24, 2024, form BP-A0943, Small Claims for Property Damage or Loss (31 U.S.C. § 3723), id. at 4; his April 25, 2024, TRULINCS message asserting that he had asked for, but not received, his property, id. at 5, and a November 11, 2024, partial TRULINCS message that is styled as an amended complaint, id. at 6.

To the extent plaintiff seeks to amend his operative amended complaint to include this loss-of-property claim, such amendment is "futile" because it is plain on the face of the filings that this claim is unexhausted. See Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011); Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006) (en banc).

Alternatively, even were plaintiff's instant loss-of-property claim exhausted, the court still would decline to extend a Bivens remedy because, *inter alia*: the claim amounts to a "new context" that differs in a meaningful way from previously recognized Bivens causes of action, Ziglar v. Abbasi, 582 U.S. 120, 139 (2017) ("Abbasi"); "special factors counsel[ ] hesitation" in recognizing a new remedy "in the absence of affirmative action by Congress," id. at 136; see Hernandez v. Mesa, 589 U.S. 93, 102 (2020); and plaintiff has alternative remedies, including his above-noted still-pending administrative tort claim under 31 U.S.C. § 3723, Abbasi, 582 U.S. at 141–42, 148;

3

see Earle v. Shreves, 990 F.3d 774, 780 (4th Cir.), cert. denied, 142 S. Ct. 358 (2021); see also Coleman v. Mauney, No. CV 1:23-001127, 2025 WL 1056888, at *19–20 (M.D.N.C. Jan. 31, 2025) (finding a claim under 31 U.S.C. § 3723 is an alternative remedy to a Bivens claim), report and recommendation adopted, No. 1:23-CV-01127, 2025 WL 942947 (M.D.N.C. Mar. 28, 2025).

Accordingly, the court DENIES the motion for compensation [D.E. 42]. See Egbert v. Boule, 596 U.S. 482, 492 (2022) (finding Abbasi analysis "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy," and noting a "rational reason" to defer to Congress will be present "in most every case").

Defendant Garrity's Converted Motion for Summary Judgment:

1) Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

2) Discussion:

Garrity argues that plaintiff failed to exhaust his administrative remedies as to his claims before filing this action. See Garrity's Mem. [D.E. 33] at 7–11; Reply [D.E. 38]; Reply [D.E. 47].

The Prison Litigation Reform Act ("PLRA") states, *inter alia*: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see id. at 524 (providing federal prisoners suing under Bivens "must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit"). Successful exhaustion of administrative remedies under the PLRA "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation, alteration, and internal quotation marks omitted); see Booth v. Churner, 532 U.S. 731, 741 (2001) (noting the PLRA requires exhaustion of administrative remedies "regardless of the relief offered through administrative procedures").

Administrative exhaustion under the PLRA, however, is mandatory only if the grievance procedure is "available" to the prisoner. See Ross v. Blake, 578 U.S. 632, 642 (2016) ("Ross"). Grievance procedure is not "available" when: 1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or

5

intimidation." Id. at 643–44; see Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022); Moss v. Harwood, 19 F.4th 614, 621–23 (4th Cir. 2021); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

A prisoner, however, may not avoid the PLRA's exhaustion requirement by exhausting his claims after filing the action or by amending the complaint to show exhaustion of claims while the action is pending. See Johnson v. Jones, 340 F.3d 624, 627–28 (8th Cir. 2003) (noting that "permitting exhaustion *pendente lite* undermines the objectives of section 1997e(a)"); Hayes v. Stanley, 204 F. App'x 304, 304 n.1 (4th Cir. 2006) (per curiam) (unpublished) (finding that failure to exhaust administrative remedies before filing an action may not be cured by later amendment).

Failure to exhaust administrative remedies is an affirmative defense that a defendant generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

The BOP has a multi-tiered Administrative Remedy Program ("ARP") for exhaustion of administrative remedies. See 28 C.F.R. §§ 542.10, et seq. An inmate first seeks to informally resolve the complaint by filing Form BP-8 and, if the matter cannot be so resolved, the inmate must file a formal written "Administrative Remedy Request" (Form BP-9). 28 C.F.R. §§ 542.13, 542.14(a). An inmate then may appeal the decision to the Regional Director within twenty days of the date of the Warden's BP-9 response by filing Form BP-10. 28 C.F.R. § 542.15. Finally, the inmate may appeal the BP-10 decision to the General Counsel within thirty days of the Regional Director's response by filing Form BP-11. Id.

Here, Dorthea Orr declares, *inter alia*, that: Orr is a BOP Paralegal Specialist; Orr has access to official BOP records to include plaintiff's records in the SENTRY database; the attached

records are "business records of regularly conducted activity" that Orr is "qualified to authenticate"; Orr certifies that the attached records "(1) were made at or near the time of the occurrence or the matters set forth by, or from information transmitted by, a person with knowledge of those matters," "(2) were kept in the course of regularly conducted activity," and "(3) were made by the regularly conducted activity as a regular practice"; the BOP ARP coincides with 28 C.F.R. § 542; the SENTRY record shows all administrative remedy requests plaintiff filed while in BOP custody; a review of the record shows that, on April 12, 2024, plaintiff submitted an administrative remedy request to the Butner Warden alleging physical and sexual assault or abuse in REMEDY ID 1196170; "This remedy request was closed and an explanation was provided to" plaintiff; according to the SENTRY report, this response was processed and mailed to plaintiff on April 15, 2024; on April 25, 2024, plaintiff submitted an administrative remedy request to the Mid-Atlantic Regional Office associated with REMEDY ID 1196170; this remedy request was rejected, and a remark stated plaintiff should "wait for a copy of the Warden's response (which must be attached to the appeal) before filing an appeal with the Regional Office"; "Based on this information, it appears [plaintiff] filed his appeal to the Mid-Atlantic Regional Office before receiving the Warden's response"; plaintiff has not submitted any further administrative remedy requests since April 25, 2024; and the SENTRY report indicates that plaintiff did not ever refile an appeal to the Regional Office or appeal to the BOP's Central Office. See Orr Decl. [D.E. 34].

The record supports Orr's declaration. See Orr Decl. Attach. [D.E. 34-1] at 4–5 (SENTRY report reflecting, *inter alia*, that plaintiff's administrative remedy request in REMEDY ID 1196170 was received at Bunter on Apr. 12, 2024, rejected by the Regional Office on Apr. 25, 2024, but not reflecting any Regional Office resubmission or appeal to the BOP Central Office); see also Compl. Attach. [D.E. 1-1] at 2 (Apr. 26, 2024, receipt of administrative remedy form,

7

indicating that, on Apr. 12, 2024, plaintiff filed a Request for Administrative Remedy in REMEDY ID 1196170, which asserted assault by staff, and which had a response deadline of May 2, 2024).

Plaintiff's responses do not question the authenticity of the SENTRY report. His response in opposition, which is sworn under penalty of perjury, instead argues that his various attached documents show that he "exhausted his administrative [sic]." See Pl.'s Resp. [D.E. 36] at 3.

The first attachment is an April 14, 2024, letter from plaintiff describing the February 12, 2024, use-of-force incident. Pl.'s Resp. Attach. [D.E. 36-1] at 1. This letter comprised the initial complaint. See Compl. [D.E. 1]. The second attachment is a September 11, 2024, letter which plaintiff purportedly wrote to "Counselor Grimaldo," entitled "Fabricated Lie – False Write-Up," addressing the February 12, 2024, use-of-force incident and his subsequent March 4, 2024, write-up. See Pl.'s Resp. Attach. [D.E. 36-1] at 2. The third attachment is a March 5, 2024, receipt of administrative remedy indicating that, on October 16, 2023, plaintiff filed an entirely different administrative remedy request in REMEDY ID 1178300. Id. at 3. The fourth attachment is an April 12, 2024, response from Butner Warden Katrina Heckard as to plaintiff's administrative remedy request in REMEDY ID 1196170, informing plaintiff that an inquiry would be conducted into his allegations of staff misconduct and that his "Request for Administrative Remedy is for informational purposes only." Id. at 4. Notably, plaintiff also attached to his initial complaint this April 12, 2024, response from Warden Heckard. See Compl. Attach. [D.E. 1-1] at 3.

Plaintiff's subsequent memorandum, which also is sworn under penalty of perjury, argues that: the incident occurred as alleged; the Warden wrote a response but "took no action"; an "Emergency BP-9 takes care of all Administrative Remedies [sic]"; he believes the Regional Director also did not act; this court's acceptance of his complaint means he exhausted his administrative remedies; the administrative remedy became "unavailable" to him when he was

8

transferred within the F.C.I. Butner complex; the "Federal Medical Center where the incident happened does not have administrative procedures for remedial schemes thus FMC is exempt from sexual abuse allegations because inmates may proceed directly to court [sic]"; he "did not have to exhaust [his] administrative remedies because [for his] section 1983 claim[,] no such remedies were available to [him] [sic]"; and "regardless[,] [he] did exhaust [his] administrative remedies [sic]." See Pl.'s Mem. [D.E. 43] at 2–4.

Plaintiff's additional documents filed in opposition to Garrity's motion include: his November 11, 2024, amended complaint, [D.E. 44] at 1–3; his May 5, 2025, letter to the Clerk of Court, [D.E. 44-1] at 1; his April 4, 2024, request for administrative remedy, [D.E. 44-2] at 1; his April 15, 2024, TRULINCS message about the February 12, 2024, use-of-force incident, id. at 2; a March 5, 2024, receipt of administrative remedy noting, on October 16, 2023, he filed a different administrative remedy request in REMEDY ID 1178300, id. at 3; an April 26, 2024, receipt of administrative remedy noting, on April 12, 2024, he filed an administrative remedy request in REMEDY ID 1196170 alleging assault by staff, with a May 2, 2024, response deadline, id. at 4; the April 12, 2024, response from Warden Heckard as to his administrative remedy request in REMEDY ID 1196170, id. at 5; out-of-circuit citations with his hand-written notes asking if non-exhaustion of remedies was shown in this case, id. at 6–11; a partial printout of Younger v. Dupree, No. 21-6423, 2024 WL 3025121, at *1 (4th Cir. June 17, 2024) (per curiam) (unpublished), cert. denied, 145 S. Ct. 1184 (2025)), id. at 12–13; and a partial printout of Ross, id. at 14–15.

Contra the arguments in his responses, plaintiff's various documents, letters, and messages do not reflect an "emergency" grievance or exhaustion of the ARP. Rather, the uncontroverted SENTRY report shows that he did not fully exhaust his claims before filing this action. See Woodford, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's

9

deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

To the extent plaintiff argues he need not fully exhaust the ARP because his grievance implicates the Prison Rape Elimination Act ("PREA"), he is incorrect. See Does 8-10 v. Snyder, 945 F.3d 951, 956 (6th Cir. 2019) (noting the "PREA generally left intact the PLRA's exhaustion requirement," excepting an "agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse" (quoting 28 C.F.R. § 115.52(b)(1)); see also BOP Program Statement 1330.18, *Administrative Remedy Program*, at 12–16, available at https://www.bop.gov/PublicInfo/execute/policysearch# (search by program statement number) (visited Jan. 13, 2026) (discussing ARP procedures under the PREA and defining an "emergency grievance"). Plaintiff also fails to show that any grievance alleging sexual abuse he properly filed was denied as untimely. See Wells v. Fallen, No. CA 0:12-304-CMC-PJG, 2013 WL 4538055, at *6 (D.S.C. Aug. 6, 2013), report and recommendation adopted as modified, No. CA 0:12-304-CMC-PJG, 2013 WL 4537430 (D.S.C. Aug. 26, 2013), aff'd, 547 F. App'x 230 (4th Cir. 2013).

Neither plaintiff's apparent misunderstandings about the ARP, nor the severity of the claims in his grievance, obviate the PLRA's exhaustion requirement. See Ross, 578 U.S. at 641 ("The PLRA's history (just like its text) thus refutes a 'special circumstances' exception to its rule of exhaustion."); Williams v. Carvajal, 63 F.4th 279, 290 (4th Cir. 2023) ("Simple unawareness [of an administrative remedy], however, does not rise to the level of unavailability."); see also Moore, 517 F.3d at 725 ("a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are" (citations omitted)); Burgess v. Igboekwe, No. 5:12-CT-3017-F, 2012 WL 6054009, at *5 (E.D.N.C. Dec. 5, 2012) (rejecting as excuse for failure to exhaust administrative remedies inmates' claimed

10

ignorance of grievance procedure due to officials' purported failures (collecting cases)); Custer v. W.V. N. Reg'l Jail, No. CIV.A. 2:08CV54, 2009 WL 1390817, at *6 (N.D.W. Va. May 15, 2009) ("There is simply nothing in the PLRA, or the pertinent caselaw, which supports the plaintiff's assertion that a transfer to another facility necessarily renders his administrative efforts futile.").

Here, the exhaustion issue is not "intertwined with the merits of" plaintiff's claims, cf. Perttu v. Richards, 605 U.S. 460, 468 (2025), and his bald assertions about exhaustion fail to show that the ARP was "unavailable" to him within the meaning of Ross, 578 U.S. at 643–44, and either are contradicted by the record, or otherwise are insufficient to defeat Garrity's motion for summary judgment, see Fed. R. Civ. P. 56(e); Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) (noting, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion"); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting, "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)); see also Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (noting, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him" (citations omitted)); Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (finding, if a defendant shows a prisoner did not use available administrative remedies, the burden "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him"); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials."); Graham v. Gentry, 413 Fed. App'x 660,

11

663 (4th Cir. 2011) (per curiam) (unpublished) (noting a plaintiff bears the burden of showing the unavailability of administrative remedies (citation omitted)); cf. Griffin, 56 F.4th at 335–39.

After considering the record evidence and reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, the court finds Garrity has met his burden of showing the absence of a genuine issue of material fact regarding plaintiff's failure to exhaust administrative remedies for his claims before filing the instant action, Celotex, 477 U.S. at 325, see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167, but that, as to "unavailability" of the ARP, plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted); cf. Ross, 578 U.S. at 643–44.

Regardless of the merits of the claims, because Garrity has shown that plaintiff failed to fully exhaust his administrative remedies as to these claims before filing this action, Garrity and the other remaining defendants are entitled to judgment as a matter of law, Fed. R. Civ. P. 56 (a), (f); Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85, and dismissal of this action without prejudice is appropriate, see Moss, 19 F.4th at 623 n.3 (collecting cases).

## Conclusion:

In sum, the court: DENIES plaintiff's "motion to compensate" [D.E. 42]; GRANTS Garrity's converted motion for summary judgment [D.E. 32]; GRANTS summary judgment for the remaining defendants, Fed. R. Civ. P. 56(f); DISMISSES WITHOUT PREJUDICE the action for failure to exhaust administrative remedies; and DIRECTS the clerk to close the case.

SO ORDERED this 14th day of January, 2026.

RICHARD E. MYERS II
Chief United States District Judge